IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 17-0145-CG-MU |
| | ) | |
| CITY OF MOBILE, ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

On June 13, 2017, Defendants State of Alabama, Donald Valeska,

Gerrilyn Grant, and William Dill[1] filed an Amended Motion to Dismiss all counts

and causes of action made against them by Plaintiff in this action. (Doc. 47).

This motion has been referred to the undersigned Magistrate Judge for entry of

a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D.

Ala. Gen. LR 72. Having reviewed the relevant pleadings, the amended motion

and arguments made by the State and the AG Defendants (Doc. 47), Plaintiff's

response in opposition (Doc. 66), and the relevant law, the undersigned

Magistrate Judge **RECOMMENDS** that the Amended Motion to Dismiss filed by

the State of Alabama and the AG Defendants be **GRANTED** for the reasons set

forth below.

## SUMMARY OF PROCEEDINGS

On April 6, 2017, Plaintiff George Martin filed a complaint against

Defendants City of Mobile, Alabama, County of Mobile, Alabama, Thomas

---

[1] Valeska, Grant, and Dill are referred to herein as the "AG Defendants."

Calhoun, Wilbur Williams, Donald Pears, Charles Bailey, Mark Neno, State of Alabama, Donald Valeska, William Dill, and Gerrilyn Grant. (Doc. 1). He sued the individual defendants in their official and individual capacities. (*Id*. at p. 1). In his complaint, he made claims against these defendants for violation of his civil rights pursuant to 42 U.S.C. §§ 1983 and 1988, false arrest, malicious prosecution, false imprisonment, abuse of process, and outrage based upon his wrongful conviction of the capital murder of his wife. (*Id*. at p. 2). On June 6, 2017, Plaintiff filed an amended complaint, in which he dropped the County of Mobile as a defendant. (Doc. 43). Defendants State of Alabama, Donald Valeska, Gerrilyn Grant, and William Dill filed a motion to dismiss the claims asserted against them in the amended complaint on June 13, 2017. (Doc. 47). Plaintiff filed a response in opposition to the motion to dismiss on July 13, 2017. (Doc. 66).

## SUMMARY OF ALLEGATIONS[2]

In the fall of 1995, Plaintiff George Martin was an Alabama state trooper who was married to Hammoleketh Martin. (Doc. 43 at p. 6). Mrs. Martin's body was found in her burned-out vehicle near Willis Road and Highway 90 in Mobile County, Alabama in the late night/early morning hours of October 8-9, 1995. (*Id*. at p. 9). Shortly after Mrs. Martin's body was discovered, Mobile Police Department ("MPD") investigators determined that the car belonged to Plaintiff and/or his wife. (*Id*. at p. 10). MPD investigators were charged with collecting and

---

[2] For purposes of considering this motion to dismiss, Plaintiff's factual allegations have been accepted as true and considered in the light most favorable to Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

identifying evidence from the scene of the car fire and preparing reports detailing their observations. (*Id*.). However, the MPD investigators charged with this task failed to collect properly, identify, and prepare reports regarding multiple pieces of exculpatory evidence. (*Id*.). For example, investigators improperly failed to preserve and record evidence concerning a plastic gas can, improperly removed objects from the car and failed to preserve or record them, and failed to record and preserve the evidence of and results from a search for bike tracks near the scene. (*Id*. at pp. 10-11).

From the beginning of the investigation, Plaintiff cooperated with authorities by submitting himself to interrogation and allowing a search of his residence, including a search on the evening of October 9, 1995. (*Id*. at p. 11). MPD investigators who performed the search of Plaintiff's residence failed to collect properly, store, and record evidence taken from his residence, lost and destroyed certain evidence, and hid the fact that evidence had been mishandled. (*Id*. at pp. 11-13). MPD investigators also received additional pieces of exculpatory evidence and information, which they failed to investigate in any meaningful way, resulting in the irretrievable loss of leads. (*Id*. at pp. 14-16). In or about January of 1997, Defendant Thomas Calhoun, in his newly appointed role as commander of the MPD criminal investigation division, took charge over and personally participated in the investigation. (*Id*. at p. 16). Despite his access to the results of the initial investigation and his personal participation in the continued investigation, Calhoun intentionally ignored or failed to investigate leads pointing to other suspects or alternative theories in any meaningful way.

(*Id*. at pp. 17-19).

The Mobile County District Attorney's office was not able to obtain a grand jury indictment against Plaintiff. (*Id*. at pp. 19-20). On October 9, 1997, Plaintiff filed a lawsuit against certain MPD investigators for certain conduct in connection with the investigation of Mrs. Martin's death. (*Id*. at p. 20). After the lawsuit was filed, Calhoun and other investigators at the MPD pressed for an indictment and prosecution of Plaintiff, which resulted in the transfer of the criminal case in its entirety from the DA's office to the Alabama Attorney General's office. (*Id*.). They were assisted in this effort by the AG Defendants. (*Id*.). The consideration by the AG Defendants of whether to proceed with a prosecution of Plaintiff involved investigative activities regarding the merits of the case. (*Id*.). The AG Defendants successfully convinced the AG's office to take the case, and the case transfer, which involved administrative activities by the AG Defendants, was completed on or about June 10, 1999. (*Id*.). After the AG's office took over the case, the DA's office advised the AG's office by letter that it would not be involved in the case. (*Id*.).

On June 15, 1999, the AG Defendants obtained an indictment against Plaintiff by failing to present multiple pieces of exculpatory evidence that undermined probable cause and by making false arguments. (*Id*. at pp. 20-21). Mobile County Circuit Court Judge Ferrill McRae issued an Open-File Discovery Order in the criminal case against Plaintiff. (*Id*. at p. 21). The AG Defendants delegated their prosecutorial duty to disclose evidence favorable to Plaintiff to his criminal trial counsel to Defendant Calhoun. (*Id*.). Calhoun was solely responsible

for determining what to disclose and what not to disclose to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963) and the Open-File Discovery Order. (*Id*.). The AG Defendants either provided no instructions to Calhoun or, alternatively, provided incorrect legal advice to Calhoun regarding the legal requirements of *Brady* and the Open-File Discovery Order. (*Id*.). Despite the existence of exculpatory evidence within the possession, custody, or control of the AG Defendants and the MPD Defendants, no such evidence was ever produced to Plaintiff's criminal trial counsel. (*Id*.). This was Calhoun's first time overseeing document and evidence production to defense counsel. (*Id*.). Calhoun intentionally did not produce exculpatory evidence within his possession or control to Plaintiff's criminal trial counsel. (*Id*. at pp. 22-23). Calhoun's suppression of exculpatory evidence was done with the cooperation and assistance of Defendant Neno. (*Id*. at p. 24).

In addition, Calhoun, Neno, and the AG Defendants participated in the fabrication of evidence in the months leading up to the criminal trial, including the manufacturing of a false claim by a jailhouse snitch. (*Id*. at p. 24-27). The AG Defendants knew that Calhoun had suppressed, among other things, *Brady* material. (*Id*. at p. 27). The AG Defendants proceeded to trial without any attempt to produce or disclose the exculpatory evidence suppressed by Calhoun and made arguments to the jury that the state circuit court later described as "untruths" and "partial truths," which arguments would have been unavailable or undermined if the suppressed evidence had been disclosed. (*Id*. at p. 28). Plaintiff alleges that the misconduct of the AG Defendants and the MPD

Defendants was extensive, pervasive, deliberate, and egregious. (*Id*. at p. 31).

On May 10, 2000, Plaintiff was convicted of capital murder, and the jury recommended a sentence of life without the possibility of parole. (*Id*. at p. 32). The trial judge overrode the recommendation of the jury and sentenced Plaintiff to death. (*Id*.). Plaintiff filed a timely appeal of his conviction and sentence. (*Id*.). On December 10, 2004, Plaintiff lost his direct appeal and, on June 17, 2005, was again resentenced to death. (*Id*.). His sentence was affirmed on appeal on November 23, 2005. (*Id*.).

On May 5, 2006, Plaintiff filed a Rule 32 post-conviction petition in the state circuit court. (*Id*.). After years of pursuing discovery of the original prosecution file, in 2011, the Alabama Supreme Court upheld the circuit court's order requiring production of the same. (*Id*.). The State produced over 14,000 pages of materials to Plaintiff, which was thousands of pages more than had originally been produced and included some of the *Brady* material that had been withheld from Plaintiff's criminal trial counsel. (*Id*.). The State continued to withhold a substantial amount of material on the basis of privilege or work product. (*Id*.). After an *in camera* review, the court ordered the State to produce additional documents, including certain "investigator's notes" that contained *Brady* material. (*Id*. at p. 32-33). The circuit court held a three-week evidentiary hearing on Plaintiff's Rule 32 motion in April and July of 2012. (*Id*. at p. 33). During the hearing, Calhoun offered certain testimony that the circuit court found and the Court of Criminal Appeals affirmed was not credible. (*Id*.). Defendants Williams, Pears, and Bailey also provided testimony at the hearing that was

directly contradicted by previous sworn and detailed affidavits and/or deposition testimony. (*Id*. at p. 34).

On August 30, 2013, the circuit court issued an order vacating Plaintiff's conviction and death sentence and granting him a new trial based on multiple violations of *Brady* during the investigation, prosecution, and trial of Plaintiff. (*Id*.). The State appealed the order, which was affirmed by the Alabama Court of Criminal Appeals on December 12, 2014. (*Id*.). The Alabama Supreme Court denied the State's petition for a writ of certiorari on April 17, 2015. (*Id*.). On May 7, 2015, Plaintiff was released on bond, and on July 20, 2015, he moved to dismiss the indictment with prejudice. (*Id*. at pp. 38-39). After briefing and a two-day evidentiary hearing, the circuit court dismissed the indictment against Plaintiff with prejudice on March 14, 2016, finding that the State of Alabama had acted willfully and intentionally in depriving Plaintiff of his constitutional right to a fair trial. (*Id*. at p. 39). The circuit court found that the AG Defendants used "partial truths and untruths with knowledge" during the prosecution of the case thereby committing willful misconduct. (*Id*. at p. 39-40). On December 15, 2017, the Alabama Court of Criminal Appeals affirmed the circuit court's order dismissing the indictment. *State v. Martin*, CR-15-0664, 2017 WL 6398318 (Ala. Cr. App. Dec. 15, 2017).

The AG Defendants have also been found to have violated *Brady* in other criminal cases. (*Id*. at p. 35). In *State v. Moore*, 969 So. 2d 169, 173-74 (Ala. Crim. App. 2006), Defendants Valeska and Dill were found to have violated *Brady* by withholding the findings of an exculpatory FBI report. (*Id*.). Defendant

Valeska was also found to have knowingly withheld exculpatory evidence in *Gibson v. State*, 580 So. 2d 38 (Ala. Crim. App. 1990). (*Id*.). Prosecutors with the Attorney General's office, including Valeska, were found to have committed prosecutorial misconduct, including the failure to produce exculpatory evidence to such a degree in a criminal prosecution involving Tieko, Inc., that the judge in the federal parallel civil case noted that the Alabama circuit court dismissed the criminal prosecutions after finding that the prosecutors' misconduct had "far surpasse[d] in both extensiveness and measure the totality of any prosecutorial misconduct ever previously presented to or witnessed by this court." (*Id*. at pp. 35-36). Valeska has been found to have committed prosecutorial misconduct in other cases, including *Sawyer v. Alabama*, 693 F. Supp. 1036 (S.D. Ala. 1988), *Britain v. State*, 533 So. 2d 684, 691 (Ala. Crim. App. 1988), and *Jennings v. State*, 588 So. 2d 540 (Ala. Crim. App. 1991). (*Id*. at p. 36).

In his amended complaint, Plaintiff alleges that, prior to his unlawful trial and conviction, Defendant State of Alabama acted with deliberate indifference to the constitutional rights of individuals charged with felonies and awaiting trial by implementing, encouraging, tolerating, and/or ratifying inadequate policies, procedures, regulations, practices, customs, training, supervision, and/or discipline concerning the handling of exculpatory evidence under *Brady* and open-file discovery orders, the obligations of prosecutors to provide truthful, accurate and complete information, the obligations of prosecutors regarding the use of jailhouse snitches, and the collection, identification, recording and preservation of evidence in connection with a jailhouse snitch. (*Id*. at pp. 48-49).

Plaintiff further alleged that these acts of deliberate indifference were so widespread as to constitute the official policy, custom, and/or practice of the State of Alabama and that the State of Alabama had notice of the need to instruct, train, supervise, and/or discipline employees with regard to their constitutional obligations based upon, in part, the extensive history of prosecutorial misconduct by Valeska, Dill, and other prosecutors in the AG's office. (*Id*. at p. 49).

In his amended complaint, Plaintiff alleges that the AG Defendants violated his constitutional rights when, in their official capacities, they engaged in activities outside the prosecutor's role, including participating in and executing the decision to transfer the criminal case against Plaintiff from the DA's office to the AG's office, relinquishing duties under *Brady* and the Open-File Discovery Order to Calhoun or, in the alternative, providing Calhoun with incorrect legal advice regarding the legal requirements of *Brady* and the Open-File Discovery Order, knowingly failing to preserve exculpatory evidence, knowingly failing to provide a post hoc remedy for the unlawful consequences of the violation of his constitutional rights when the prosecution had been completed, and other misconduct that was so egregious as to fall wholly outside the prosecutorial role. (*Id*. at pp. 49-50). Plaintiff contends that the actions of the State of Alabama and the AG Defendants, in their official capacities, resulted directly in the constitutionally deficient investigation and prosecution of Plaintiff and abridged his rights under the Fourth and Fourteenth Amendments and caused him injury, including distress, physical pain, anguish, fear, suffering, reputational harm, loss

of livelihood, and monetary damages. (*Id*. at p. 50).

Plaintiff also alleges that the AG Defendants are liable in their individual capacities. Specifically, he alleges that, prior to his conviction in 2000 and continuing thereafter, despite having within their possession and control exculpatory evidence that could have proved Plaintiff innocent of the crime or created reasonable doubt as to him being the perpetrator, they covered up, lied about, and withheld knowledge from him of the *Brady* material in violation of clearly established constitutional law. (*Id*. at p. 51). He claims the AG Defendants acted in violation of the policies and procedures of the AG's office by abdicating their prosecutorial duties under *Brady* and the Open-File Discovery Order to Calhoun or, in the alternative, by giving incorrect advice to Calhoun that he had discretion regarding what to produce and not produce under *Brady* and the Open-File Discovery Order, by failing to collect, identify, record and/or preserve exculpatory evidence, by failing to provide truthful, accurate, or complete information about evidence or the lack thereof relating to a prosecution when seeking an indictment and conviction, by failing to provide truthful, accurate, or complete testimony under oath, by facilitating, cultivating, preparing and/or using compromised non-credible snitch testimony, by encouraging or accepting the transfer of a criminal case despite misconduct by the investigators, and by failing to provide a post hoc remedy for the unlawful consequences of the violations of Plaintiff's constitutional rights when the prosecution had been completed. (*Id*. at pp. 51-52).

Plaintiff further contends that the AG Defendants intentionally, maliciously,

recklessly, and/or with deliberate indifference to their legal obligations and Plaintiff's constitutional rights concealed the *Brady* material from him, lied about the *Brady* material, delegated their duties to untrained individuals, and failed to disclose the *Brady* material to him, both prior to and subsequent to his conviction, (*Id*. at pp. 52-54), with the knowledge and intention that their conduct would result in the prosecution and likely conviction of Plaintiff. (*Id*. at p. 53). Plaintiff also alleges that, in investigating and prosecuting him for murder, the AG Defendants, including Valeska as the lead prosecutor, acted against him with malice, and the actions of the AG Defendants constituted malicious prosecution in violation of Plaintiff's rights. (*Id*.). Plaintiff avers that the knowing, malicious, intentional, willful, reckless, negligent, and/or deliberately indifferent actions of the AG Defendants directly, substantially, proximately, and foreseeably brought about Plaintiff's conviction, his illegal imprisonment on death row, and his other injuries and damages, including distress, physical pain, anguish, fear, suffering, reputational harm, loss of livelihood, and monetary damages. (*Id*. at p. 54). Plaintiff further alleges that the AG Defendants conspired with others in these unlawful actions, thereby causing his injury and damages. (*Id*. at pp. 54-55). Based upon the same set of circumstances, Plaintiff has also asserted claims under Alabama state law for false arrest, malicious prosecution, false imprisonment, abuse of process, and the tort of outrage against the AG Defendants. (*Id*. at pp. 56-63). Plaintiff seeks compensatory damages from all defendants and punitive damages from the individual defendants. (*Id*. at p. 64).

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the plaintiff. *See id.; Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997).

In addition to the foregoing, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim.'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)). A complaint is also subject to dismissal "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## CONCLUSIONS OF LAW

The State of Alabama and the AG Defendants, in their official and individual capacities, have moved to dismiss all causes of action against them on the ground that they are absolutely immune from suit. (Doc. 47 at pp. 3-4).

### A. The State of Alabama

Plaintiff's only claim against the State of Alabama is set forth in Count IV of his amended complaint. (Doc. 43 at p. 48). In that count, Plaintiff alleges that the State of Alabama is liable to him for compensatory damages under 42 U.S.C. § 1983. The State of Alabama claims that it is immune from suit for monetary damages under the Eleventh Amendment of the United States Constitution. (Doc. 47 at p. 4). The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).

The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against a state or state officials sued in their official capacity.  The first exception is when a state has waived its Eleventh Amendment sovereign immunity and has consented to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). This exception does not apply here, however, because the State of Alabama has not waived its immunity to suit in § 1983 cases.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Alabama Constitution explicitly states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. I, § 14.  The second exception is when Congress has properly abrogated sovereign immunity through its powers under the Fourteenth Amendment; however, such an abrogation has not occurred with respect to § 1983 claims.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-73 (1996); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). The third exception, established under *Ex parte Young*, recognizes that the Eleventh Amendment does not bar § 1983 actions against state officials when the actions seeks prospective injunctive relief to end continuing violations of federal law.  *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also Seminole Tribe of Fla.*, 517 U.S. at 73 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1986)); *Summit Med. Assoc. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

As noted in *Summit Medical*, "[b]ecause of the important interests of federalism and state sovereignty implicated by *Ex parte Young* ... the doctrine is not without limitations."  180 F.3d at 1337.  One limitation is that "the *Ex parte*

*Young* doctrine applies only to ongoing and continuous violations of federal law."
*Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)).  "A plaintiff may not
use the doctrine to adjudicate the legality of past conduct."  *Id.* In the instant suit,
Plaintiff seeks only monetary damages for past conduct. Because he has not
asserted a claim for injunctive relief to end continuing violations of federal law,
the *Ex parte Young* exception does not apply.

In addition, "[s]ection 1983 provides a federal forum to remedy many
deprivations of civil liberties, but it does not provide a federal forum for litigants
who seek a remedy against a State for alleged deprivations of civil liberties."  *Will
v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). By definition, only
"persons" may be sued for a constitutional deprivation under § 1983. 42 U.S.C. §
1983 (1994). In *Will*, the Court held that "neither a State nor its officials acting in
their official capacities are 'persons' under § 1983" with regard to claims for
damages. 491 U.S. at 71. Therefore, the State of Alabama is not subject to suit
for monetary damages under § 1983 for this reason as well.

Because the State of Alabama is protected by the Eleventh Amendment's
grant of immunity for claims seeking monetary damages and because § 1983
does not provide a remedy against a State, the State of Alabama is due to be
dismissed as a defendant in this action.

**B. The AG Defendants in Their Official Capacities**

In Count IV of the amended complaint, Plaintiff has asserted a § 1983
claim against the AG Defendants in their official capacities. (Doc. 43 at p. 48). It
is well established that a suit against an Alabama Assistant Attorney General in

his or her official capacity is in effect a suit against the State of Alabama. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Edwards v. Wallace Cnty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995); *Robert v. Abbett*, No. 3:08-CV-329-WKW(WO), 2009 WL 902488, at *21 (M.D. Ala. Mar. 31, 2009). Therefore, like the § 1983 claim against the State of Alabama, which seeks only an award of damages, the § 1983 claim asserted against the AG Defendants in their official capacities is also barred by the Eleventh Amendment. "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Harbert Int'l,* 157 F.3d at 1277 (citing *Graham*, 473 U.S. at 166-67).

In addition, as discussed above, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" with regard to claims for damages. *Will*, 491 U.S. at 71. Therefore, the AG Defendants in their official capacities are not subject to suit for monetary damages under § 1983 for this reason as well.  Accordingly, the §1983 claims asserted against the AG Defendants in their official capacities are due to be dismissed.

## C. The AG Defendants in Their Individual Capacities

In his amended complaint, Plaintiff has asserted claims against the AG Defendants in their individual capacities under § 1983 for violation of his constitutional rights and claims under state law for false arrest, malicious prosecution, false imprisonment, abuse of process, and the tort of outrage. (Doc. 43 at pp. 51-63). In their motion to dismiss, the AG Defendants argue that these claims are barred by the doctrine of prosecutorial immunity. (Doc. 47 at p. 10).

When a prosecutor is sued for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case, a prosecutor is entitled to absolute prosecutorial immunity from damages. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Fullman v. Graddick*, 739 F.2d 553, 558-59 (11th Cir. 1984). Courts must consider the functions being performed by the prosecutor to determine if the prosecutor is to be accorded absolute immunity for his actions. *See Malley v. Briggs*, 475 U.S. 335, 342 (1986). "A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999). "Such absolute immunity 'extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Hart v. Hodges,* 587 F.3d 1288, 1295 (11th Cir. 2009) (citing *Jones,* 174 F.3d at 1281; *Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1279 (11th Cir.2002)). "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." *Jones,* 174 F.3d at 1281-82; *accord Rowe,* 279 F.3d at 1279-80 (prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity, but a prosecutor who participated in the search of a suspect's apartment is entitled to only qualified immunity). "Prosecutors have absolute immunity when 'filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory

evidence, refusing to investigate ... complaints about the prison system, [and] threatening ... further criminal prosecutions ...'" *Hart,* 587 F.3d at 1295 (quoting *Henzel v. Gerstein,* 608 F.2d 654, 657 (5ᵗʰ Cir. 1979)).

In response to the motion to dismiss, Plaintiff asserts that the following allegations against the AG Defendants are not subject to absolute prosecutorial immunity:

1)  the AG Defendants gave either no instruction or directions to Calhoun or gave him incorrect legal advice regarding the legal requirements of *Brady* and the Open-File Discovery Order, thereby resulting in the failure to disclose exculpatory evidence to Plaintiff's criminal trial counsel (Doc. 43 at p. 21);

2)  the AG Defendants completely and improperly relinquished their *Brady* duties to Calhoun (Doc. 66 at pp. 17-18);

3)   the AG Defendants investigated the case against Plaintiff and learned about the weaknesses of the case, including the lack of probable cause and the MPD investigators' violations of Plaintiff's constitutional rights, but instead of taking steps to remedy the constitutional deficiencies, had the case transferred to the AG's office (*Id.* at p. 19);

4)  the AG Defendants participated in the pre-trial fabrication of evidence (Doc. 43 at pp. 24-26); and

5)  the AG Defendants committed particularly egregious misconduct that fell outside the prosecutorial role (Doc. 66 at pp. 22-23).

This court finds that the AG Defendants' actions described in 1) and 2) above, as egregious as they were,[3] unquestionably fall within the category of actions protected by prosecutorial immunity. These actions, which involved the production or withholding of exculpatory evidence, which even if performed by Calhoun were imputed to the AG Defendants,[4] were an integral part of the prosecutor's role in the judicial system and were not investigative or administrative in nature. The precedent in this Circuit establishes that prosecutorial immunity extends to the AG Defendants' alleged actions in both "***initiating*** and pursuing a criminal prosecution" against Plaintiff "even where the[y] … knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts." *Prince v. Wallace,* 568 F.2d 1176, 1178–1179 (5th Cir.1978) (emphasis added). Thus, despite the asserted *Brady* violations, the AG Defendants are entitled to absolute immunity for the § 1983 federal claims against them in their individual capacities where monetary damages are sought. *See Hart*, 587 F.3d at 1295*; see also Porter v. White*, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007)("Injury ... that results from a prosecutor's failure to comply with the *Brady* rule cannot be redressed by a civil

---

[3] The state court found that there was evidence that the prosecutors in Plaintiff's trial, the AG Defendants here, ***knowingly*** suppressed exculpatory evidence and that the suppression of such evidence and the prejudice caused thereby was egregious enough to support the "extreme sanction" of dismissing with prejudice the indictment against Plaintiff. *State v. Martin*, CR-15-0664, 2017 WL 6398318, at *24-25 (Ala. Cr. App. Dec. 15, 2017). The state court noted that two of the AG Defendants here, Valeska and Dill, also prosecuted another capital case where they were found to have committed *Brady* violations. *Id*.

[4] *State v. Martin*, 2017 WL 6398318, at *24 ("Regardless of whether this evidence was known only to Major Calhoun, his knowledge was imputed to the prosecutors; therefore, there was evidence indicating that the State knowingly suppressed exculpatory evidence.").

damages action against the prosecutor under § 1983 because the prosecutor is absolutely immune from such liability.").

Plaintiff argues that the AG Defendants here are not protected from his claims because he alleges that the AG Defendants totally relinquished their duties to produce evidence to Calhoun and then failed to instruct him properly regarding the production of evidence. The Court finds, however, this distinction inconsequential as to the applicability of the doctrine of prosecutorial immunity. Eleventh Circuit precedent is clear that prosecutors are immune to a suit for damages arising from their failure to produce exculpatory evidence. The Court is also not swayed by Plaintiff's argument that *Burns v. Reed,* 500 U.S. 478 (1991) dictates that immunity is not proper here because the doctrine does not cover the act of prosecutors giving legal advice to police. In *Burns*, the Supreme Court held that it did not believe "that advising the police ***in the investigative phase of a criminal case*** is so 'intimately associated with the judicial phase of the criminal process,' … that it qualifies for absolute immunity." 500 U.S. at 493 (quoting *Imbler*, 424 U.S. at 430) (emphasis added). In this case, the alleged "legal advice" was not given during the investigative phase, but during the prosecution phase and concerned production of evidence to counsel for Plaintiff, which is clearly part of the judicial phase of the criminal prosecution.

As discussed above, absolute prosecutorial immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings … and which occur in the course of his role as an advocate for the State." *Hart,* 587 F.3d at 1295. The Court finds that any review of the evidence gathered and

of the MPD's investigation of the case that was performed by the AG Defendants as part of their decision to seek an indictment and transfer the case to the AG's office was an adversarial function taken on behalf of the state. *See Imbler*, 424 U.S. at 431 (holding that in initiating a prosecution, the prosecutor is immune from a civil suit for damages under § 1983). Therefore, their actions as set forth in paragraph 3) above are also protected by absolute prosecutorial immunity.

The claim set forth in paragraph 4) above is based upon Plaintiff's contention that Calhoun, Neno (another MPD officer), and the AG Defendants "manufactured or encouraged and facilitated the manufacturing of a false claim by jailhouse snitch Clifford Davis … regarding a purported confession made by Plaintiff while Plaintiff was housed at the [j]ail awaiting his criminal trial." (Doc. 43 at p. 24). With regard to this alleged fabrication of evidence claim, Plaintiff alleges as follows: Davis, who considered himself to be a "very close friend" of Calhoun and the Attorney General, was in jail for a traffic violation, but was transferred to the wedge in which Plaintiff, an accused murderer, was being held. (Id.). Davis claimed that Plaintiff and three other inmates in that wedge confessed to him. (Id.). Calhoun conducted the MPD's preliminary interview with Davis and, in violation of practice, he did not record the interview. (Id.). AG Defendants Valeska and Grant conducted and videotaped a subsequent interview of Davis, and, during that interview, there were repeated stops in the videotape during which Calhoun, Neno, Valeska, and/or Grant manufactured for Davis, or facilitated Davis's manufacturing of, his testimony against Plaintiff. (Id. at p. 25).

At the time of the alleged confession, the jail operated a surveillance camera in the wedge housing Plaintiff and Davis, which captured portions of the wedge and recorded onto a videotape that was only maintained for a certain period of time. (Id.). Calhoun, Neno, and the AG Defendants knew that a camera captured portions of the wedge and that the videotape was only maintained for a certain period of time. (Id.). Neither Calhoun, Neno, the AG Defendants, nor anyone else at the MPD or AG's office, however, made any attempt to preserve the relevant surveillance tape or collect and preserve the jail's files on Davis or any official records regarding his claim. (Id.).

For purposes of this motion only, the Court will assume that the alleged actions of the AG Defendants set forth above were wrongful. "Under the 'functional approach' to absolute prosecutorial immunity, [the wrongfulness of the act] - such as participating in a conspiracy to manufacture evidence - while not properly an aspect of a prosecutor's duty, is immaterial." *Neville v. Classic Gardens*, 141 F. Supp. 2d 1377, 1381 (S.D. Ga. 2011) (citing *McKeon v. Daley*, 101 F. Supp. 2d 79, 87 (N.D.N.Y. 2000)). In other words, "'the immunity attaches to [the prosecutor's] function, not to the manner in which [s]he performed it. Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant.'" *Id*. (quoting *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2nd Cir. 2001)(quotes and cites omitted)). Thus, "[e]ven if [a prosecutor] intentionally acted in bad faith, she is still absolutely immune because she was still performing prosecutorial duties." *Id*. at 1383. Because the interview alleged by Plaintiff took place while he was in jail awaiting trial, and

therefore, was obviously done in preparation for trial, when the AG Defendants were clearly functioning as advocates, the AG Defendants are entitled to prosecutorial immunity from the claims arising from the allegations set forth in paragraph 4) above.

Finally, Plaintiff contends that his § 1983 claim against the AG Defendants should not be barred by prosecutorial immunity because of the level of egregiousness of their actions. As discussed above, it is not the wrongfulness of the prosecutor's actions nor the prosecutor's motivation that determines the applicability of the doctrine of prosecutorial immunity, but the function that the prosecutor was performing at the time of the alleged wrongful actions. As Judge Learned Hand wrote:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance[,] it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), cert. denied, 339 U.S. 949 (1950), *quoted in Imbler,* 424 U.S. at 428. Therefore, Plaintiff's contention in this regard fails.

Plaintiff has also asserted claims against the AG Defendants under Alabama state law based upon the above allegations for false arrest, malicious prosecution, false imprisonment, abuse of process, and the tort of outrage. (Doc. 43 at pp. 56-63). Under Alabama law, these claims are also barred by prosecutorial immunity. *Bogle v. Galanos*, 503 So. 2d 1217, 1219 (Ala. 1987) ("it is sufficient to say that the [prosecutorial] immunity under state law in this case is

at least as broad as immunity under a § 1983 action"); *see Pardue v. City of Saraland*, Civ. A. No. 99-0799-CG-M, 2011 WL 130332, at *6 n.3 (S.D. Ala. Jan. 14, 2011) (same).

## CONCLUSION

As set forth above, the Court is constrained to find that all claims Plaintiff has asserted in his Amended Complaint (Doc. 43) against the State of Alabama and the AG Defendants in their official capacity are barred by Eleventh Amendment immunity. Likewise, all claims Plaintiff has asserted against the AG Defendants in their individual capacity are barred by the doctrine of absolute prosecutorial immunity. Accordingly, it is **RECOMMENDED** that the Amended Motion to Dismiss filed by the State of Alabama, Donald Valeska, Gerrilyn Grant, and William Dill (Doc. 47) be **GRANTED** and that all claims asserted against them in Plaintiff's Amended Complaint be **DISMISSED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the **29th** day of **March, 2018**.

               s/P. BRADLEY MURRAY
               UNITED STATES MAGISTRATE JUDGE